## Cornelia Russell

*v.*

## Christian Mandell.

1. **Burnt record**—*abstracts of title admitted in evidence.* Where the evidence shows that a deed has been destroyed, and that the record of it has also been destroyed, an abstract shown to have been made in the ordinary course of business, and delivered to the parties interested in the land, is, as to such deed at least, competent evidence under the 24th section of the Burnt Record Act.

2. **Limitation**—*meaning of "good faith," in act of* 1839. Where there is no actual fraud, and no proof showing that the color of title was acquired in bad faith, which means fraud, it will be held to have been acquired in good faith, notwithstanding the party acquiring it had notice of the defects in it, which prevented its being an absolute title.

3. **Same**—*possession necessary under act of* 1839. In order to constitute possession under the first section of the Limitation Act of 1839, actual residence is not necessary, but such possession may be by any use that clearly indicates an appropriation of the land by the person claiming to hold it.

4. **Same**—*payment of taxes.* Where land is sold one year, and the purchaser put into possession, but, owing to the absence of the grantor, the deed is not executed until the following year, payment of taxes made by the purchaser whilst in possession, will enure to the benefit of his title when consummated by the execution of the deed to him.

Appeal from the Superior Court of Cook county; the Hon. John Burns, Judge, presiding.

Messrs. FORRESTER, BEEM & GIBBS, and Mr. BUCKNER S. MORRIS, for the appellant.

Mr. ALLAN C. STORY, and Mr. RUFUS KING, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

In the view we take of this case, it will be unnecessary to pass upon the evidence relating to the deed purporting to have been made by appellant and her husband to Harriet A. Smith and Frances E. Hotchkiss, and dated July 8th, 1855.

We see no objection to the abstract prepared by Hawley and Simmons, with reference to the property in controversy, so far, at least, as it relates to the deed of I. H. Trabue to Harriet A. Smith and Frances E. Hotchkiss.

Hotchkiss testified this deed was in his possession in 1865, and was destroyed; and he shows how it was destroyed, so that in this respect there is no ground of objection. It was also shown that the record of the deed was burned; that the abstract was made by Hawley and Simmons, in the ordinary course of business, prior to the destruction of the record, and that it was delivered to the parties interested in the land. This was all that is required, to admit the abstract as evidence under the 24th section of the act of 1872, known as the "Burnt Record Act," Revised Statutes of 1874, p. 846, sec. 29.

The Trabue deed was made for a valuable consideration, purported to convey the land in controversy, and there is no evidence from which bad faith in its acceptance by the grantees can be inferred. It is true, the abstract of title furnished the grantees showed that appellant was the patentee of the land from the government, October 1, 1839, and failed to show that she had parted with her title, but this is not sufficient to charge the grantees with bad faith.

It was said, in *McCagg et al.* v. *Heacock et al.* 42 Ill. 157, "The doctrine is, that bad faith, as contradistinguished from good faith, in the Limitation Act, is not established by showing actual notice of existing claims or liens of other persons

to the property, or by showing a knowledge, on the part of the holder of the color of title, of legal defects which prevent the color of title from being an absolute one. Where there is no actual fraud, and no proof showing that the color of title was acquired in bad faith, which means in or by fraud, this court will hold it was acquired in good faith." And the same rule was, in substance, previously announced when the case was before this court at a prior term. *McCagg et al.* v. *Heacock et al.* 34 Ill. 479. See, also, *Rawson* v. *Fox et al.* 65 id. 200. Possession, therefore, under this deed, may be regarded as under color or claim of title made in good faith, and since appellant's husband died more than nine years before the commencement of the suit, it only remains to be determined whether the evidence shows that appellee has been in the actual possession of the property, and paid all taxes legally assessed thereon, for seven successive years, so as to bring the case within the 1st section of the Limitation Act of 1839.

The payment of taxes for the requisite length of time has been proved, and no objection on that account is urged, except with reference to the taxes for the year 1864. Smith and Hotchkiss conveyed in 1864, but the taxes for that year were not paid by them, but by their grantee, Blomgren. This, it is claimed, on the authority of *Jayne* v. *Gregg*, 42 Ill. 413, was not a sufficient payment for the purposes of the statute. In that case the taxes were paid by Jones after he had parted with his title, and it was held, therefore, that payment by him was merely payment by a stranger, and the defendant who had the colorable title, and should have paid taxes, could derive no aid from the payment by Jones. Here, however, the evidence shows that the contract for the purchase of the property was made by Blomgren in 1863, under which he was placed in possession, but that the execution of the deed was deferred until in 1864, in consequence of the husband of Frances E. Hotchkiss being absent, in the army. Under these circumstances, the payment of the taxes by Blomgren was strictly proper, and was in no sense the act of a stranger to the title. He had an equity which he was authorized to protect, and

when his rights under the contract were perfected, by the execution of the deed, the payment he had made enured to the benefit of the colorable title he thereby obtained.

In order to constitute possession, within the meaning of the section of the statute to which we have referred, it has never been supposed that actual residence on the tract, or its inclosure, or cultivation, is indispensable. "It may be by inclosure, by cultivation, by the erection of buildings, or other improvements, or in fact by any use that clearly indicates its appropriation and actual use by the person claiming to hold it." *Truesdale* v. *Ford*, 37 Ill. 210.

The evidence shows that, in 1856, after the conveyance to Smith and Hotchkiss, they gave verbal permission to one Granger to cut hay on the land, which he did. In 1857, they gave him a written permission to use the land. Under this he controlled the land for some three years, cutting hay off it, and preventing others from using it, etc., and the whole eighty seems to have been fenced in as early as 1860 or 1861; and in 1861 or 1862, there were cow yards on a portion of it, and some of it was broken. Blomgren took possession in 1863, in his own right, and, while he owned it, used the land for pasture, made hay on it, and broke some of it. Appellee's possession followed, and continued until the commencement of this suit.

Without referring to the evidence in detail, we are of opinion it is sufficiently proved that the possession of the property has been adverse to appellant, continuous, and sufficiently open and notorious to inform the world that it was claimed and occupied by those in whom the colorable title is shown to have been, ever since 1856. We do not consider it essential that an actual constant use of the whole premises should have been proved, but that it was enough that there was a continuous exercise of acts indicating clearly a claim of ownership to the property, such as, from its nature and condition, it was reasonably susceptible of. Taking the entire evidence on this point into consideration, we do not think it probable that any one residing in the vicinity of the property could have been in

doubt whether the property was in the actual possession of some one or not, or as to who had the possession.

We see no cause to disturb the judgment, and it is therefore affirmed.

*Judgment affirmed.*